**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BRENDA HENDERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-10-0317 |
| | § | |
| WAL MART STORES TEXAS, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is an employment discrimination case. Brenda Henderson alleges that her employment was terminated by Wal-Mart because of her discrimination based on her race, national origin, age, and disability, and in retaliation for her complaints about pay and assignments. She also asserts a claim under the Equal Pay Act, 29 U.S.C. § 206(d).

Two motions are pending. Henderson, who is proceeding *pro se*, has moved for counsel to be appointed. (Docket Entry No. 13). Wal-Mart has moved to dismiss Henderson's claims under Rule 12(b)(6). Wal-Mart argues that Henderson's discrimination and retaliation claims are barred by limitations and that she has not adequately pleaded her Equal Pay Act claim. (Docket Entry No. 5). Henderson has responded, (Docket Entry Nos. 9, 10), and Wal-Mart has replied, (Docket Entry No. 12).[1]

Based on the allegations in the complaint; the record; the motions, response, and reply; and the applicable law, this court denies Henderson's motion for appointment of counsel and grants Wal-

---

[1] Henderson has also moved for leave to amend her complaint. Wal-Mart is not opposed. (Docket Entry No. 12). The motion for leave to amend is granted. The additional allegations Henderson attached to her motion, (Docket Entry No. 9 at 2), will be treated as part of her complaint.

Mart's motion to dismiss the discrimination and retaliation claims, without leave to replead.  The

motion to dismiss is denied as to the Equal Pay Act claim.[2]

I.      Background:  The Allegations in the Complaint

Until April 11, 2008, Brenda Henderson worked the overnight shift as a stocker at the Wal-

Mart store in La Grange, Texas.  Henderson had worked in the store in a variety of positions since

1985.  During the last few years of her employment, she was formally disciplined three times.  On

June 7, 2005, she was issued a verbal reprimand for "being very disrespectful to the manager around

other associates in the backroom."  (Docket Entry No. 1 at 7).  In January 2006, she was issued a

written reprimand—the next progressive discipline step—for speaking to the same manager, Debra

Foreman, "in a very loud, disrespectful tone" and slamming her hand on a desk.  (*Id.* at 8).  In April

2007, after an investigation by the store manager, Kevin Ickles, Henderson was disciplined for

having "made a very disrespectful page over the intercom system towards the associates who should

have been at the register" and "proceed[ing] to verbally berate" Foreman and another Wal-Mart

employee.  (*Id.* at 10).  Henderson was given the next step in progressive discipline, a "decision-

making day" on which she was required to stay home.  (*Id.*).  Henderson contested the last

discipline.  (*Id.*).

Approximately one year later, on April 11, 2008, another incident occurred.  According to

a letter that Wal-Mart's counsel sent the EEOC, which Henderson attached to her motion to appoint

counsel, Henderson became upset after Foreman paged another employee over the intercom.

Henderson yelled at Foreman in the presence of several other employees.  The Assistant Store

---

[2]  Henderson's motion to stay resolution of the motion to dismiss pending the motion to appoint counsel is
denied as moot.

Manager, Sarah Hunt, sent Henderson home for the rest of the shift, asking her to return later to meet

with Ickles.  When Henderson returned, Ickles terminated her employment for misconduct, the next

progressive-discipline step.  Henderson met with a Human Resources manager a week after she was

fired.  During that meeting, Henderson stated that she had not behaved in the way that management

claimed.

Henderson also contacted the EEOC.  On August 28, 2008, she sent a written "reply" to the

EEOC.  (Docket Entry No. 13, Ex. A).  Although the title of this document suggests that some prior

communication had taken place, the record does not show what it was.  In the document, Henderson

stated that she "is an African Descent person caused to be in her lower self, because of conditions,

years of race discrimination-linked characteristics by some of the white race and by some of other

races, leading to unfair treatment on 04/11/2008."  (*Id.* at 1-2).  Foreman, Hunt, and Ickles are all

white.  Henderson referred to "employment discrimination by race-linked characteristics."  She also

claimed that she had been retaliated against, apparently by being denied unemployment benefits,[3]

and that she suffered age discrimination.  (*Id.* at 1-3).  The reply was signed by Henderson and a

man named Willie Mazon.  (*Id.* at 3).

On October 17, 2008, the EEOC sent Henderson a letter informing her that it had received

her correspondence.  The letter stated:

> The information you gave us needs further clarification.  You have
> identified write ups issued to you in 2006.  These are beyond the 300
> days allowed for our agency to consider for an investigation.  Your
> termination on April 14, 2007, needs further clarification.  Since you
> indicate that the termination for being disrespectful is discriminatory

---

[3]  Henderson attached a document to her complaint sent to her by the TWC division responsible for
unemployment benefits.  (Docket Entry No. 1, Ex. A at 12).  The document reveals that a dispute arose
because the TWC paid Henderson too much in benefits.

because of your race, gender and in retaliation, you now need to specify exactly how the termination is directly related to those categories.  As to retaliation, did you make any written or formal complaints to higher management about any discrimination?  If so, to whom and when (by date, name, and title).  You must also consider and if applicable, identify any other employee of your similar classification and within at least two years of your termination has been terminated.  Your handwritten attached correspondence is too vague and non-specific to formalize a complaint at this time.[4]

However, our experience is that an interview is the best way to obtain the needed information.  Please call us as soon as possible.  The interview might be conducted in person or by telephone.  Whether in person or by phone, the interview can take up to one hour or more.
. . .

Please contact me as soon as possible because charges of employment discrimination must be filed within the time limits imposed by law.  When you call, please use the "EEOC Inquiry No." listed at the top of this letter and mention that you are responding to this request for information.  Please also read the enclosed brochure, "What You Should Know Before You File A Charge With EEOC," for answers to frequently asked questions about employee rights and the EEOC process.

IF WE HAVE NOT HEARD FROM YOU WITHIN 30 DAYS OF THIS LETTER, WE WILL ASSUME THAT YOU DID NOT INTEND TO FILE A CHARGE OF DISCRIMINATION.

(Docket Entry No. 30, Ex. CC at 19).

The next communication in the record is a January 23, 2009 letter from Willie Mazon on Henderson's behalf to Joe Vigil, an EEOC investigator.  Mazon asked Vigil to consider an attached handwritten statement from Sarah Hunt, the Wal-Mart Assistant Store Manager, written on April 11, 2008 describing the circumstances surrounding Henderson's termination.  Mazon pointed out

---

[4]   The reference to handwritten correspondence and an April 14, 2007 termination date suggest that Henderson may have given the EEOC a document in addition to the August 28, 2008 reply.  But no additional document is in the record.

Hunt's statement that Henderson felt she was being discriminated against on the basis of race. Henderson apparently expressed this feeling to Hunt after her after the final incident with Foreman, just before Hunt sent Henderson home for the remainder of her shift and asked her to return later to speak to Ickles.   (*Id* at 14-16).

On April 6, 2009, the EEOC sent Henderson another letter in response to her "recent inquiry (an office visit, phone call, correspondence, or electronically submitted intake questionnaire)." (*Id.* at 9).  This April 6 letter used the same identification number Henderson had been assigned in the October 17, 2008 letter.  The EEOC attached a formal charge form prepared for Henderson's signature.  The letter instructed Henderson to review the form, make corrections, sign and date it, and return it to the EEOC.  The letter told Henderson that these steps were "necessary if you wish to file a charge" and that no charge had yet been filed.  Henderson was again warned about the time limits for filing a charge and that failing to respond within thirty days would lead the EEOC to assume that Henderson had decided not to proceed with her discrimination complaint.  (*Id.*).

Henderson signed a signed formal charge of discrimination before a notary on April 13, 2009.  (Docket Entry No. 1, Ex. B).  She checked the boxes for discrimination based on race, retaliation, and age.  She did not check the boxes for color, sex, religion, national origin, or disability.  The charge stated:

> I had been employed with [Wal-Mart] since 1985 performing cashier and stock duties.  During my employment I was subjected to harassment and different terms, conditions, and privileges of employment under the management of Debra (LNU), Manager and Sarah Hunt, Assistant Manager.  I contacted Human Resources personnel and explained that I was being subjected to discriminatory acts by the store Managers.  However, on or about March 3, 2008, I was terminated without written notice.

> I believe that I have been discriminated against in violation of Title
> VII of the Civil Rights Act of 1964, as amended because of my race,
> Black and in violation of the Age Discrimination in Employment Act
> of 1967 because of my age (52).

(*Id.*)

On April 20, the EEOC notified the Texas Workforce Commission Civil Rights Division that it had received a charge from Henderson and would be investigating. (Docket Entry No. 13, Ex. CC at 6). The TWC signed the notice, acknowledging that the EEOC would investigate. (*Id.* at 8). On April 20, the EEOC also notified Wal-Mart that Henderson had filed a charge and asked Wal-Mart to respond by May 20. (*Id.* at 5). Counsel for Wal-Mart sent the EEOC a letter contesting Henderson's claims. (*Id.* at 24-28). On October 30, 2009, the EEOC issued a right-to-sue letter. It informed Henderson that it was closing the file on her charge because "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Docket Entry No. 1, Ex. B).

Henderson was granted permission to proceed *in forma pauperis* and filed this suit on February 10, 2010. (Docket Entry No. 1). She used a form complaint, checking the boxes stating that she was bringing claims under Title VII, the ADEA, and the Equal Pay Act. She also stated that she was discriminated against because of: (1) race, African-American; (2) national origin, African descent; (3) age, born on July 19, 1957; (4) disability, "[m]y health are descending with age 'neck, back and legs pain'"; and (5) retaliation, in that she was given more work and disciplined after she complained about not getting a raise to make her pay closer to Debra Foreman's. (*Id.* at 3). She alleged that Wal-Mart discriminated by terminating her employment, harassing her, and by failing to give her hand-written records she wanted to use in her unemployment benefits dispute and otherwise causing her to lose her dispute with the TWC and receive reduced benefits. (*Id.* at 4).

Henderson asked for $1.5 million in damages in addition to reimbursement of her lost unemployment benefits.  (*Id.* at 6).  These motions followed.

## II.    Wal-Mart's Motion to Dismiss

### A.    The Title VII, ADA, and ADEA Claims

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is a valid means to raise a statute of limitations defense*.  Bush v. United States*, 823 F.2d 909, 910 (5th Cir. 1987).  A court should dismiss based on the statute of limitations only if that bar to relief appears on the face of the complaint or other appropriately considered materials.  *Garrett v. Commonwealth Mortgage Corp. of Am.*, 938 F.2d 591, 594 (5th Cir. 1991).  Appropriate materials include attachments to the complaint.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 127 S.Ct. 2499 (2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  The Fifth Circuit has also approved of allowing a district court to consider documents that a defendant attaches to a motion to dismiss as "part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'"  *Collins*, 224 F.3d at 498-99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993).  By attaching exhibits to the motion to dismiss, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."  *Id.* at 499.

Title VII requires plaintiffs to file a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *see also Webb v. Cardiothoracic Surgery Assocs.*, 139 F.3d 532, 537 (5th Cir. 1998), *abrogated on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 2414 (2006).  If the plaintiff has "instituted proceedings with a State or local agency with authority to

grant or seek relief from such practice," the limitations period for filing a charge with the EEOC

extends to 300 days.  42 U.S.C. § 2000e-5(e)(1); *see also Griffin v. City of Dallas*, 26 F.3d 610 (5th

Cir.1994).  The same rule applies to claims under the Americans with Disabilities Act ("ADA"), *see*

42 U.S.C. § 12117(a), and the Age Discrimination in Employment Act ("ADEA"), *see* 29 U.S.C.

§ 626.  "Congress intended the limitations period contained in § 2000e-5(e)(1) to act as a statute of

limitations."  *Webb*, 139 F.3d at 537 (*citing Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385,

393-94, 102 S. Ct. 1127, 1132-33 (1982)).   Texas has a qualifying state agency, the Texas

Workforce Commission Civil Rights Division.  In light of the agency's worksharing agreement with

the EEOC, the limitations period on Henderson's claims is 300 days.

Henderson alleged in her complaint that her employment was terminated on April 11, 2008.

She attached her formal Charge of Discrimination, dated April 13, 2009, as an exhibit to her

complaint.  Based on these properly considered materials, the affirmative defense of limitations was

apparent from the complaint because 367 days passed between termination and the charge.

Wal-Mart argues that the Title VII, ADA, and ADEA claims should be dismissed because

"[t]he law is clear that a Charge must be filed with the EEOC within 300 days of the alleged

unlawful employment practice or the claim is barred."  (Docket Entry No. 12 at 2 (emphasis in

original)).  Henderson argues in response that she satisfied the limitations period because she began

corresponding with the EEOC in August 2008.  This is essentially an argument that the formal

charge should relate back to the date of the August correspondence, presumably the August 28, 2008

"reply" statement in the record.

It is undisputed that Henderson's formal charge was not filed within 300 days of her firing.

The issue is whether the date of that charge relates back to August 28, 2008.  The presence of

allegations that might give rise to relation back does not remove the limitations defense from the face of the complaint.  Relation back is Henderson's response to that defense.  There are no nonconclusory factual allegations in the complaint (or attachments to the complaint) that would establish a basis for relating Henderson's formal complaint back to the date of her informal correspondence.  The motion to dismiss could be granted on this basis alone.  But Henderson has submitted portions of the administrative record, including her correspondence with the EEOC, as exhibits to the motion to appoint counsel.  This court will consider these materials that Henderson submitted.

The case law shows that, under some circumstances, an untimely EEOC charge may relate back to an earlier document that is not itself an EEOC charge.  In *Edelman v. Lynchburg College*, 535 U.S. 106, 122 S. Ct. 1145 (2002), the Supreme Court upheld the validity of an EEOC regulation, 29 C.F.R. §1601.12(b), which provides:

Notwithstanding the provisions of paragraph (a) of this section,[5] a

---

[5]  Paragraph (a) sets forth the required elements of a charge. It states that "[e]ach charge should contain the following:"

(1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7;

(2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);

(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See § 1601.15(b);

(4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and

(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

> charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. *A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments* and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge *will relate back to the date the charge was first received.* A charge that has been so amended shall not be required to be redeferred.

29 C.F.R. §1601.12(b) (emphasis added). The *Edelman* Court reversed the lower court and held that this regulation was a valid interpretation of the statutory exhaustion requirements.

The plaintiff in *Edelman* had filed with the EEOC an unverified letter within the limitations period and a verified charge after it had expired. The Supreme Court emphasized that it would not decide whether limitations barred the plaintiff's claim. Instead, the Court limited its decision to upholding the regulation, leaving it to the Fourth Circuit to determine on remand whether the initial letter was itself a "charge" that triggered the relation-back provision in the regulation. *Edelman*, 535 U.S. at 118-19, 122 S. Ct. 1145. The Court stated that its judgment did "not, however, reach the conclusion drawn by the District Court, and the single judge on the Court of Appeals, that Edelman's letter was not a charge under the statute because neither he nor the EEOC treated it as one." *Id.* But the Court noted that "at the factual level their view has some support," *id.* at 119, because the EEOC had not given the employer notice of the charge as the statute required.

On remand, the Fourth Circuit held that Edelman's initial letter to the EEOC was a valid charge and permitted the formal charge to relate back to the date of the letter. *Edelman v. Lynchburg College*, 300 F.3d 400, 403-05 (4th Cir. 2002). Edelman's letter was a five-page, single-

---

29 C.F.R. §1601.12(a).

spaced document describing his allegations and stating his belief that the employer had engaged in sex and national origin discrimination.  In the letter, Edelman included the following statement: "I hereby file a charge of employment discrimination against Lynchburg College . . . and I call upon the EEOC to investigate this case. . . ." *Id.* at 402.  The letter was signed but not verified.  Three weeks later, the EEOC sent Edelman a letter similar to the one Henderson received in this case on October 17, 2008.  The letter from the EEOC stated that Edelman's letter was not sufficient for an investigation and asked for an informational interview.  Like the EEOC's letter to Henderson, the EEOC letter warned Edelman that a failure to respond within 30 days would lead the EEOC to "assume that you did not intend to file a charge of discrimination." *Id.* at 403.

In the lawsuit, Edelman's former employer argued that his letter to the EEOC was insufficient because the EEOC had not treated it as a charge.  The employer cited the EEOC's failure to assign Edelman's letter a charge number or forward a copy to the employer or to the state agency with which it had a worksharing agreement. *Id.* at 404.  The court saw these not as problems with the charge but as evidence of the EEOC's failure to do its job properly, which could not preclude Edelman's claim. *Id.*  The employer did not argue that Edelman's letter "was substantively deficient." *Id.* at 405.  The record "did not reflect that Edelman prevented the EEOC from completing its statutory duties regarding the charge." *Id.*  As a result, the original letter was a valid charge to which the formal charge could relate back. *Id.*  The court gave no weight to the employer's argument that Edelman's filing of a formal charge demonstrated that he subjectively did not consider the earlier letter to be a charge. *Id.*

The major Fifth Circuit case is *Price v. Southwestern Bell Telephone Co.*, 687 F.2d 74 (5th Cir. 1982).  In that case, the court held that a form an EEOC employee completed during an intake

11

interview with the plaintiff qualified as a charge under the EEOC regulations.  The court began by observing that charges of employment discrimination should be viewed with the "utmost liberality," because Title VII is a remedial statute and charges are generally prepared by nonlawyers.  A charge's principal function is to provide the EEOC with "an adequate factual basis" to initiate its investigation.  *Id.* at 78.  The *Price* court noted that "[w]hile neither signed nor sworn, the form completed [at the intake interview] informed the EEOC of the identity of the parties and described the discriminatory conduct in enough detail to enable it to issue an official notice of charge to [the employer], thus setting the administrative machinery in motion."  *Id.*  The fact that the EEOC had treated the document as a charge weighed in favor of finding that it satisfied the regulations.  Finally, the court noted that there was no evidence of any prejudice to the employer because it had received prompt notice of Price's claims after the interview.  *Id.* at 78-79.

The EEOC's decision to initiate its administrative process and notify Price's employer distinguishes *Price* from *Edelman* and from the facts of the present case.  A more recent, unpublished, Fifth Circuit case suggests that this distinction might not always be important.  In *Linton v. City of Marlin*, No. 00-50227, 253 F.3d 706 (Apr. 16, 2001) (per curiam) (unpublished), the court reversed a district court's grant of summary judgment in the employer's favor.  The issue was whether an unsworn letter the plaintiff sent to the EEOC qualified as a charge.  As in the present case, the EEOC had not given notice to the employer until after the formal charge was filed.  The Fifth Circuit held that it was not necessary for the EEOC to give notice or institute an administrative proceeding immediately, so long as it did so after the formal charge was filed.  It was sufficient that, after the sworn charge was filed, "[t]he EEOC compiled an investigative file, notified the [employer] of the investigation, and eventually issued a 'right-to-sue' letter."  *Id.*

12

Finally, the court held that the five-month delay between the informal charge and the formal charge was not unreasonably long and did not unduly prejudice the employer. *Id.*

It appears, however, that the *Linton* court regarded the facts before it as distinguishable from *Gonzalez v. Hoechst Celanese*, No. C-97-125, 1997 WL 855968 (S.D. Tex. Dec. 1, 1997). In *Gonzalez*, the court held that a one-page, unsworn letter the plaintiff sent to the EEOC was not a charge because the EEOC treated the plaintiff's letter as an "inquiry," which it returned with "explicit instructions to respond with more information prior to the 300-day deadline." *Id.* at *6. Gonzalez was given specific directions on what to include in her response. *Id.* at *1. The EEOC did not notify the employer until after Gonzalez had filed her formal charge, eight months after receiving the EEOC's instructions. *Id.* at *6; *Cf. Conner v. Louisiana Dept. of Health & Hospitals*, No.06-31074, 247 Fed. App'x 480 (5th Cir. Aug. 7, 2007) (per curiam) (unpublished) (finding an intake questionnaire to be a "charge" when it provided enough information to allow the EEOC to issue notice and the EEOC did in fact issue notice to the employer upon completion of the questionnaire).

This case is similar to *Gonzalez*. Just as the EEOC did not consider Gonzalez's first letter as a charge, the EEOC did not consider Henderson's August 28, 2008 correspondence as a charge. On October 17, 2008, the EEOC sent Henderson a letter asking for specific information about her claims. The letter informed her that she was required to respond before the statutory deadline. It also informed her that failure to respond within 30 days would be treated as a decision not to pursue a charge of discrimination. Henderson did not file her formal charge until April 13, 2009, six months after the EEOC sent her filing instructions. And the EEOC did not forward Henderson's information to Wal-Mart or the TWC until after she filed her formal charge.

All of this is evidence that the EEOC did not  treat Henderson's August 28 "reply" as a charge.

Instead, the EEOC clearly notified Henderson that her August 28 "reply" was not sufficient and

provided her with practical guidance on how to file a proper charge.  After receiving this

response, it would not have been reasonable for Henderson to view the "reply" as a charge.  This

is not a case in which the EEOC misled Henderson into thinking that her submissions were

sufficient to qualify as a charge.

Henderson's formal EEOC charge does not relate back to any earlier correspondence.  Her

Title VII, ADA, and ADEA claims are barred by limitations.  Wal-Mart's motion to dismiss these

claims is granted.

**B.      The Equal Pay Act Claim**

Henderson's claim under the Equal Pay Act, 29 U.S.C. § 206(d), is not subject to the

administrative exhaustion requirement.  *See Stith v. Perot Sys. Corp.*, No. 04-10442, 122 Fed.

App'x 115, 119 (5th Cir. Jan. 31, 2005) (per curiam) (unpublished) (citing *County of Washington

v. Gunther*, 452 U.S. 161, 175 n. 14, 101 S. Ct. 2242 (1981)).  Wal-Mart's motion to dismiss this

claim is based on the argument that Henderson has failed to plead facts adequate to support every

element of an Equal Pay Act claim.  Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a

claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.

Ct. 1937 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction

with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader

is entitled to relief."  FED. R. CIV. P. 8(a)(2).  *Twombly* abrogated the Supreme Court's prior

statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be

14

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S.

at 562–63 ("*Conley's* 'no set of facts' language . . . is best forgotten as an incomplete, negative

gloss on an accepted pleading standard . . . ."). To withstand a Rule 12(b)(6) motion, a complaint

must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550

U.S. at 570; *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. (citing *Twombly*, 550 U.S. at 556). The

*Iqbal* Court noted that "[t]he plausibility standard is not akin to a 'probability requirement,' but

it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing

*Twombly*, 550 U.S. at 556). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does

not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to

relief—including factual allegations that when assumed to be true 'raise a right to relief above

the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted)

(quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964–65); *see also S. Scrap Material Co. v. ABC

Ins. Co.* (*In re S. Scrap Material Co.*), 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550

U.S. 544, 127 S. Ct. at 1965), *cert. denied*, 129 S. Ct. 1669 (2009). "Conversely, 'when the

allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this

basic deficiency should . . . be exposed at the point of minimum expenditure of time and money

by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. 544, 127

S. Ct. at 1966).

Courts apply "less stringent standards to parties proceeding pro se than to parties

represented by counsel and liberally construe the briefs of pro se litigants." *Sanders v. Barnhart*, 105 Fed. App'x 535, 536 (5th Cir. 2004) (citing *Grant v. Cuellari*, 59 F.3d 523, 524 (5th Cir. 1995); *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993)); *see also Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081, (2007) (per curiam) (holding that pleadings filed by a pro se litigant are " 'to be liberally construed,' ... and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' ") (quotation omitted).

Applying the broad reading appropriate for a pro se complaint, Henderson has pleaded an Equal Pay Act violation.  The Equal Pay Act prohibits employers from discriminating on the basis of sex by paying wages to employees of one sex "at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  29 U.S.C. § 206(d)(1).  An essential element of this claim is that the plaintiff was paid less than a similarly situated male performing comparable work.  *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 722-23 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065, 107 S. Ct. 952 (1987)).  Henderson's allegations are that she was paid fifty cents less per hour than her supervisor, Debra Foreman, and that she "asked Kevin Ickles for a $.50 raise the same for what a male worker would have received working under Mr. Willie Daniel, Mr. Dave Lemly or Ms. Debra Foreman, doing the same work as plaintiff when she worked under Ms. Debra Foreman."  (Docket Entry No. 9 at 2).  She appears to allege that a male worker doing the same work she was doing would have received a $.50 increase in pay. The motion to dismiss the Equal Pay Act claim is denied.

16

### III.     Henderson's Motion to Appoint Counsel

Henderson has also asked this court to appoint her an attorney.  "Title VII provides for the appointment of an attorney for a Title VII complainant upon request 'in such circumstances as the court may deem just.'"  *Gonzalez v. Carlin*, 907 F.2d 573,  580 (5th Cir. 1990) (quoting 42 U.S.C. § 2000e-5(f)(1)).  The plaintiff does not have the automatic right to appointment of counsel.  *Id.*  (citing *Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305, 1309 (5th Cir. 1977)).  To appoint counsel under Title VII, this court must examine three factors: (1) the merits of the plaintiff's claims of discrimination; (2) the efforts taken by the plaintiff to obtain counsel; and (3) the plaintiff's financial ability to retain counsel.  *Gonzalez*, 907 F.2d at 580; *Caston*, 556 F.2d at 1309 (5th Cir. 1977); *see also Salmon v. Corpus Christi Independent School District*, 911 F.2d 1165 (5th Cir. 1990).  These factors do not establish a "hard and fast test" under which counsel must be appointed if two out of three are present.  *Agguire v. Intelogic Trace, Inc.*, No. 92-5595, 980 F.2d 1443, at *2 (5th Cir. Dec. 2, 1992) (per curiam) (unpublished).

As to the first factor, "'the determination of the EEOC, while not dispositive, is highly probative of the merits of a plaintiff's case.'" *Buesgens v. Snow*, 169 Fed. App'x 869, 870 (5th Cir. 2006) (per curiam) (unpublished) (quoting *Gonzalez*, 907 F.2d at 580 (quotation removed)).  Here, the EEOC made a determination that it was "unable to conclude that the information obtained establishes violations of the statutes." (Docket Entry No. 1, Ex. B).  Nothing in the present record warrants a contrary conclusion.

As to the second factor, Henderson has listed six private attorneys and one legal aid association she has contacted for assistance.  One firm appears to have declined the case because Henderson waited too long before filing.  Henderson does not know the reasons why two other

17

attorneys, including the one who was assisting with her unemployment claim, were unable to help her.  It is also unclear whether Henderson specifically asked that attorney to assist with this employment discrimination litigation.  Two of the attorneys told Henderson they did not have time for her case and another told her that she did not handle this type of case, all of which suggests that some counsel might be available.  Indeed, the final attorney listed in Henderson's motion is still reviewing her case and has not declined the representation.  Henderson has not presented sufficient details of her efforts and the reasons for her failure to obtain representation to show that she requires appointed counsel.

Finally, there is no evidence that Henderson can afford counsel.  She qualified for *in forma pauperis* filing, which is subject to a more demanding test than that for appointment of counsel.  *See Mikel v. Conn's Appliances*, No. , 2007 WL 4333340, at *2 (E.D. Tex. Dec. 7, 2007). This final factor weighs in favor of appointing counsel.  Nonetheless, on balance, the record does not show that Henderson is entitled to appointment of counsel.  Her motion is denied.

## IV.    Conclusion

Wal-Mart's motion to dismiss is granted with respect to the discrimination and retaliation claims and denied as to the Equal Pay Act claim.  Henderson's motion for appointment of counsel is denied.

SIGNED on April 14, 2010, at Houston, Texas.

_____
                    Lee H. Rosenthal
                    United States District Judge